FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 23, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIA G.,<br><br>                    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,[1]<br><br>                    Defendant. | NO. 1:23-CV-3112-TOR<br><br>ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S DENIAL OF BENEFITS |

BEFORE THE COURT is Plaintiff's motion seeking reversal of the Social Security Commissioner's denial of benefits (ECF No. 9). The Court has reviewed

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this under the Social Security Act, 42 U.S.C. § 405(g).

1  the administrative record and the parties' completed briefing and is fully informed.

2  For the reasons discussed below, the Court DENIES Plaintiff's motion and

3  AFFIRMS the Social Security Commissioner's denial of benefits.

### JURISDICTION

5  The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

### STANDARD OF REVIEW

7  A district court's review of a final decision of the Commissioner of Social

8  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

9  limited: the Commissioner's decision will be disturbed "only if it is not supported

10 by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

11 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

12 relevant evidence that "a reasonable mind might accept as adequate to support a

13 conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently,

14 substantial evidence equates to "more than a mere scintilla[,] but less than a

15 preponderance." *Id*. (quotation and citation omitted).  In determining whether this

16 standard has been satisfied, a reviewing court must consider the entire record as a

17 whole rather than searching for supporting evidence in isolation.  *Id*.

18 In reviewing a denial of benefits, a district court may not substitute its

19 judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

20 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

1    The Commissioner has established a five-step sequential analysis to

2    determine whether a claimant satisfies the above criteria.  See 20 C.F.R. §

3    404.1520(a)(4)(i)–(v).  At step one, the Commissioner considers the claimant's

4    work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

5    "substantial gainful activity," the Commissioner must find that the claimant is not

6    disabled.  20 C.F.R. § 404.1520(b).

7    If the claimant is not engaged in substantial gainful activities, the analysis

8    proceeds to step two.  At this step, the Commissioner considers the severity of the

9    claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

10   from "any impairment or combination of impairments which significantly limits

11   [his or her] physical or mental ability to do basic work activities," the analysis

12   proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

13   does not satisfy this severity threshold, however, the Commissioner must find that

14   the claimant is not disabled.  *Id.*

15   At step three, the Commissioner compares the claimant's impairment to

16   several impairments recognized by the Commissioner to be so severe as to

17   preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

18   404.1520(a)(4)(iii).  If the impairment is as severe, or more severe than one of the

19   enumerated impairments, the Commissioner must find the claimant disabled and

20   award benefits.  20 C.F.R. § 404.1520(d).

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 4

1    If the severity of the claimant's impairment does meet or exceed the severity

2  of the enumerated impairments, the Commissioner must pause to assess the

3  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

4  defined generally as the claimant's ability to perform physical and mental work

5  activities on a sustained basis despite his or her limitations (20 C.F.R. §

6  404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

7    At step four, the Commissioner considers whether, in view of the claimant's

8  RFC, the claimant is capable of performing work that he or she has performed in

9  the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

10  capable of performing past relevant work, the Commissioner must find that the

11  claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

12  performing such work, the analysis proceeds to step five.

13    At step five, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing other work in the national economy.

15  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

16  must also consider vocational factors such as the claimant's age, education and

17  work experience.  *Id*.  If the claimant is capable of adjusting to other work, the

18  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

19  404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the

20

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 5

analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.1560(c); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ's Findings

On May 14, 2021, Plaintiff filed for Title II disability and disability insurance benefits, with an alleged onset date of May 29, 2019. Administrative Transcript ("Tr.") ECF No. 6 at 22. Her application was initially denied on August 20, 2021, and upon reconsideration on December 27, 2021. Tr. 22. The Administrative Law Judge ("ALJ") held a telephonic hearing on November 1, 2022, and later denied the claim on November 22, 2022. *See generally* Tr. 22–36. At that hearing, Plaintiff alleged disability based on fibromyalgia, chronic fatigue, unspecified inflammatory arthritis, osteoarthritis of the spine and various joints, depression, and anxiety. ECF No. 6 at 49–50. Plaintiff's claim was then denied on appeal on June 9, 2023. *Id*. at 6.

In denying Plaintiff's claim, at step one the ALJ found that she has not

engaged in gainful activity since May 29, 2019, as evidence in a decline in income until the onset date, and then no earnings thereafter.  Tr. 25.

At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, obesity, thyroid disorder, dermatitis, spinal disorder, depression, and anxiety.  *Id*.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. *Id*.  As to Plaintiff's fibromyalgia, the ALJ determined that it did not equal a 14.00 listing.  *Id*.  Similarly, the ALJ determined that her obesity and thyroid disorders did not equal listed impairments, though it was noted that obesity's aggravating effects on other impairments was considered throughout the findings.  Tr. 25–26. Plaintiff's dermatitis does not meet the medical listing because she does not have persisting skin lesions despite continued treatment.  Tr. 26.  Finally, the ALJ determined that Plaintiff's spinal disorder did not meet Listing 1.15 or .1.16.  *Id*.

As to Plaintiff's mental impairments, the ALJ found that whether considered singularly or in combination, they did not meet or medically equal 12.04 or 12.06 and did not result in a "Paragraph B" impairment of one extreme limitation or two marked limitations in functioning.  *Id*.

Pursuant to step three, the ALJ considered Plaintiff's Residual Functional Capacity ("RFC") and found that Plaintiff has the ability to perform light work as

1    defined in 20 CFR 404.1567(b).  Tr. 27.  In reaching this conclusion, the ALJ

2    considered both whether there are underlying medically determinable physical or

3    mental impairments, and then whether those impairments may reasonably be

4    expected to produce Plaintiff's pain or other symptoms.  Tr. 28.  In considering

5    Plaintiff's subjective symptoms, the ALJ must consider other evidence in the

6    record to determine if the symptoms limit her ability to do work.  *Id*.

7         In considering the record as it relates to her physical conditions, the ALJ

8    found that some of Plaintiff's symptoms may reasonably be caused by medically

9    determinable impairments, but the intensity, persistence, and limiting effects of the

10   symptoms were not consistent with the record.  Tr. 29.  The ALJ noted that many

11   of Plaintiff's exams returned fairly normal or routine results, including two July

12   2018 exams, one which yielded relatively normal results in a range of motion and

13   some tenderness to provocative testing, and the other which did not support a

14   diagnosis of carpal tunnel.  *Id*.  Additionally, an ultrasound and CT scan performed

15   in December 2018 did not produce any evidence of abnormality.  *Id*.  And X-Rays

16   of Plaintiff spine taken in August 2021 showed unremarkable results, with mild

17   endplate changes in the cervical spine, and mild levoscoliosis in the lumbar spine.

18   *Id*.  While Plaintiff reported numerous falls, the ALJ found that she has only

19   reported one fall and has denied dizziness.  *Id*.  Plaintiff has also described being in

20   constant, debilitating pain, but the ALJ found that the record reflects that she

typically presented without distress.  *Id.*  Finally, the ALJ found that Plaintiff had reported her symptoms improved with treatment.  Tr. 30.

As the record relates to her mental conditions, the ALJ found that evidence supports Plaintiff's claim of depression and anxiety, but that these impairments would not prevent her from performing simple or detailed tasks.  Tr. 30.

At step four, the ALJ determined that Plaintiff is unable to perform any of her past relevant work as a collector or property management aide.  Tr. 34.

At step five, the ALJ determined that Plaintiff is able to perform work in the national economy based on her age, education, work experience, and residual functional capacity.  Tr. 35.  During the telephonic hearing, the vocational expert testified that Plaintiff would be able to perform such jobs as marker, router, and housekeeping as a cleaner.  Tr. 35–36.

Based on the record, the ALJ found that Plaintiff is not disabled.  Tr. 36.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for Title II disability and disability insurance.  Plaintiff raises the following issues on review:

I.    Whether the ALJ erred by not properly assessing Plaintiff's subjective testimony.

II.    Whether the ALJ erred by not properly assessing the medical opinions.

III.    Whether the ALJ erred by not properly assessing the lay opinions.

IV.    Whether the ALJ erred by not properly assessing the medically-determinable, severe disorders.

ECF No. 9 at 2.

## DISCUSSION

### I.    The ALJ did not err in assessing Plaintiff's subjective testimony.

Plaintiff asserts that the ALJ did not properly credit her own testimony regarding the severity of her symptoms.  ECF No. 9 at 3.  Plaintiff cites eight areas in which the ALJ failed to provide proper support in discounting her subjective testimony: (1) the ALJ dismissed her claims solely because they were not supported by objective evidence, which is impermissible, (2) the ALJ discounted a medication side effect of dizziness because, it was incorrectly found that Plaintiff "generally denied being dizzy," (3) the ALJ failed to consider improvement with treatment against the backdrop of the entire record, (4) the ALJ improperly considered Plaintiff's lack of "lifestyle modifications" such as a change in diet and exercise, (5) in reaching the ultimate finding, the ALJ ignored areas where Plaintiff had expressed symptoms of depression and anxiety, (6) the ALJ failed to consider that Plaintiff would be seeking formal treatment in addition to medication for her depression but for mounting medical bills, (7) that the ALJ arrived at the conclusion that Plaintiff's mental conditions inadequately severe in the face

evidence suggesting the contrary, and (8) the ALJ's assessment of Plaintiff's abilities to perform tasks on a daily basis is misguided. *Id*. at 3–12.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

A. *Plaintiff's contention that the ALJ's decision is improper because it discounts subjective testimony unsupported by objective testimony.*

If the ALJ determines that a plaintiff's subjective testimony is not creditable, the ALJ "must specifically make findings that support this conclusion," and the

findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony." *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001).  While an ALJ may not discount subjective testimony only because it is not supported by objective medical evidence, such medical evidence is still a relevant factor in determining the severity of a plaintiff's pain and its disabling effects. *Id.* (citing 20 C.F.R. § 404.1529(c)(2)).

Here, the ALJ weighed the subjective testimony against the objective medical findings and determined that Plaintiff's symptoms were not supported in the intensity, degree, and persistence that she alleged.  Plaintiff misguided her argument that the ALJ simply supplanted her testimony for that of the medical evidence presented.  Rather the ALJ used the medical evidence, accompanied by non-medical objective evidence, and concluded that the record itself did not support the degree and intensity of Plaintiff's subjective reports of her limitations because both the objective medical evidence and reports of Plaintiff's activity did not support the severity of impairment alleged.  Tr. 29.

Plaintiff also asserts that the ALJ improperly discounted her attested to pain associated with fibromyalgia symptoms, as the nature of the ailment itself is diagnosed by long term reported pain.  ECF No. 9 at 4.  This, coupled with imaging that demonstrates paresthesia could be related to fibromyalgia, should

have led the ALJ to determine that Plaintiff's fibromyalgia was more impactful in making a finding of disability. *Id.* (citing ECF No. 6 at 340). The Ninth Circuit has recognized that fibromyalgia is a valid "basis for finding disability," and developed two sets of criteria for assessment which generally include: widespread pain that lasts for at least three months, either a manifestation of at least eleven trigger points or six of more fibromyalgia-related symptoms, and lastly that there is no other explanation for the pain experienced. *Revels v. Berryhill*, 874 F.3d 648, 656–7 (9th Cir. 2017). Further, the Ninth Circuit has noted that fibromyalgia symptoms typically "wax and wane" and therefore review of the longitudinal record is necessary. *Id.* at 657.

Here, the ALJ considered the longitudinal record, and determined that Plaintiff suffers from fibromyalgia. Tr. 27. But in considering the record as a whole, the ALJ found that Plaintiff's fibromyalgia was not a barrier to her performing light work that does not require her to balance, stoop, kneel, crouch, or crawl on more than a frequent basis, and handle objects more than frequently. Tr. 33. In making this finding, the ALJ noted that record was devoid of objective evidence denoting physical abnormalities. *Id.*

B. *Plaintiff's contention that the ALJ incorrectly found that she "generally denied being dizzy."*

Plaintiff alleges that the ALJ ignored areas in the record where she did report

1    dizziness, instead focusing only on areas where she denied being dizzy.  ECF No. 9

2    at 5.  This is not an accurate characterization of the ALJ's findings.  The

3    determination states that "[a]dditionally, while she did mention that Abilify seemed

4    to cause some dizziness (Exhibit 12-F, p. 17; Exhibit 15-F, p. 8), she generally

5    denies dizziness (Exhibit 15-F, pp. 18, 21, 29, 32)")."  This seems to reflect the

6    reality of the record in which Plaintiff does often deny dizziness.  *See* ECF No. 6 at

7    488, 505, 528, 550, 553, 557, 561, 564, 571.

8       *C. Plaintiff's argument that the ALJ improperly considered both her*

9          *improvement with treatment and the fact that she did not follow*

10         *recommended "lifestyle modifications."*

11    According to Plaintiff, the ALJ did not properly consider the strides forward

12    made with treatment in the broader context of her impairments.  ECF No. 9 at 6.

13    Plaintiff notes multiple instances throughout the record that denote her ongoing

14    pain and the debilitating effects of her ailments.  ECF No. 6 at 8–9.  Further,

15    Plaintiff contends that the improvement in her symptoms was not sustained, but

16    rather "waxed and waned."  ECF No. 14 at 3.

17    An ALJ may take reports of daily activities and improvement after receiving

18    treatment as factors when assessing credibility of a plaintiff's subjective

19    description of symptoms.  *Degen v. Berryhill*, 725 F. App'x 550, 553 (9th Cir.

20    2018) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir.

2009) ("[A]n ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.")).  It was within reason for the ALJ to credit Plaintiff's subjective complaints less when weighed against the backdrop of improvement with treatment, as it appears Plaintiff's improvement followed an upward trend from December 2020 until October 2022.  Tr. at 29–30.  The ALJ was clear and specific, citing findings within the record in support of the conclusion, particularly that Plaintiff's testimony did not reflect the medical evidence provided.  *Id*.

Further, Plaintiff faults the ALJ for considering that Plaintiff's condition worsened in October of 2022, due in part to a failure to follow recommendations in diet and exercise that would ease her physical symptoms.  ECF No. 9 at 9. Plaintiff describes these recommendations as "lifestyle modifications," under SSR 19-3p, which would not allow the ALJ to discredit testimony on such a basis.  *Id*. However, as Defendant points out, SSR 18-3p is predicated on the notion that but for following the prescribed treatment, a plaintiff would not be disabled.  ECF No. 13 at 9; *see also* Soc. Sec. Ruling, SSR18-3p; Titles II & XVI: Failure to Follow Prescribed Treatment, SSR 18-3P (S.S.A. Oct. 2, 2018).  A claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can undermine symptoms reports.  *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  Here, the ALJ addressed Plaintiff's own

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 16

1   description of "not taking very good care of herself," and resulting symptoms as it

2   relates to her subjective description of the disability she experiences.  The ALJ also

3   noted that Plaintiff was instructed that she would experience relief from

4   complained of symptoms with appropriate exercise.  Tr. 30, ECF No. 6 at 488,

5   571, 632.  The ALJ properly considered this information in deciding the amount of

6   weight to apply to Plaintiff's subjective testimony.

7       *D. In reaching the ultimate finding, Plaintiff argues that the ALJ ignored areas*

8           *where she had expressed symptoms of depression and anxiety.*

9       Plaintiff alleges that the ALJ ignored areas in the record where she

10  expressed symptoms of depression and anxiety.  ECF No. 9 at 9.  However, the

11  ALJ noted that the record does reflect she does have mental health ailments but

12  does not show that such problems would prevent her from performing light work

13  with limited exposure to others.  Tr. 30.  Further, there are areas in the record that

14  notes that there were visits with medical providers where Plaintiff denied feelings

15  of depression and anxiety.  ECF No. 6 at 487, 514, 535, 561.  In sum, the ALJ did

16  not err in finding that Plaintiff's depression and anxiety were not sufficiently

17  severe and thus did not find disability.

18      *E. Plaintiff's contention that the ALJ failed to consider her medical bills as a*

19          *barrier to seeking additional treatment.*

20      Plaintiff contends the ALJ improperly characterized the record as it relates to

her treatment for depression, as the decision states that she was not seeking formal treatment because her depression was managed with medication.  ECF Nos. 9 at 9, 14 at 5.  Plaintiff appears to argue that she was attempting to catch up on medical bills, and therefore could not manage both medication and other forms of treatment for depression.  *Id*.  However, Plaintiff stated in the record that she was seeking additional medication-based treatment, which she seemed to respond well to.  ECF No. 6 at 476, 619.  The ALJ's observation that Plaintiff also stated she was satisfied with pursuing medication-based treatment does not amount to error in this portion of the analysis of Plaintiff's subjective symptoms.

F. *Plaintiff's contention that the ALJ improperly arrived at the conclusion that her mental conditions were inadequately severe based on evidence in the record suggesting the contrary.*

Plaintiff alleges that the ALJ did not provide adequate support to the finding that her mental impairments were not severe enough to find Plaintiff disabled. ECF No. 9 at 10.  However, the ALJ did provide adequate support, finding that Plaintiff's impairments were not as severe as her subjective testimony would suggest.  In understanding, remembering or applying information, the ALJ determined that Plaintiff has no limitations based on a lack of support in the record that she has any significant problems with her ability to understand, remember, or apply information, and she had reported engaging in activities, such as preparing

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 18

meals for her family, performing household chores, handling finances, shopping online, and remembering and driving to her appointments. Tr. 26. In interacting with others, the ALJ noted that the bulk of limitation Plaintiff experiences derives from pain rather than mental impairment. *Id*. The ALJ noted that Plaintiff had a moderate limitation regarding concentrating, persisting or maintaining pace, but noted she acknowledged an ability to focus sufficiently enough to take care of routine daily tasks, attend appointments, shop online for groceries and other items, handle her finances, prepare meals for her family, do light household chores, and follow a storyline on a television show. Tr. 27. Finally, as for adapting or managing oneself, the ALJ determined Plaintiff had a mild limitation based on the fact that she is nevertheless able to access treatment, request assistance when necessary, and take care of her personal needs. Moreover, the record did not reflect that her mental health issues prevent her from handling her day to day responsibilities independently. *Id*.

As it relates to Plaintiff's subjective testimony, the ALJ found that based on the record, Plaintiff's impairments would not prevent her from completing simple or detailed task, provided the interaction with others is minimal, supported by her own reports of minimal depression or anxiety. Tr. 40. This, coupled with Plaintiff's ability to conduct daily activities and manage herself, led the ALJ to conclude that Plaintiff's mental health impairments were not severe enough to

1  render a finding of disability.

2    *G. Plaintiff's contention that the ALJ's assessment of her abilities to perform*

3    *tasks on a daily basis is misguided.*

4    In addition to the argument that the ALJ erroneously found that her mental

5  impairments were not severe enough to make a finding of disability, Plaintiff also

6  argues that the ALJ discounted her physical abilities in the scope of the overall

7  finding.  ECF No. 9 at 10.  Plaintiff argues that the ALJ selectively reviewed

8  pieces of the record, and disregarded areas which would support disability.  *Id*.

9  However, as discussed above, the ALJ provided specific and clear reasons as to

10  why it was determined that Plaintiff's subjective testimony was not consistent with

11  the rest of the record.  The ALJ noted that both evidence in the record and

12  Plaintiff's description to the consultive examiner detail her ability to perform daily

13  tasks beyond her description of her physical capabilities.  Tr. 31.  Given the

14  description of her daily activities, the ALJ found these tasks to be persuasive when

15  considering Plaintiff's subjective description of her limitations.  The Court finds

16  that the ALJ is not in error.

17  **II.    The ALJ did not err because the medical opinions were properly**

18      **assessed.**

19    Plaintiff contends that the ALJ did not properly credit all the medical

20  opinions on record.  Specifically, Plaintiff argues that the ALJ impermissibly

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 20

1  discounted evidence provided by Salvador Lopez, PA-C.  ECF No. 9 at 12.  In

2  discussion of her physical symptoms, she argues that too much weight was given

3  to Marquetta Washington, ARNP, Dr. Merry Alto, and Dr. Mark Magdaleno

4  without the proper analysis.  *Id*. at 16–17.  And she also asserts that Dr. Linda

5  Lindman, Dr. Gerald Gardner, and Dr. John Wolfe were likewise given too much

6  weight in the discussion of her physical symptoms.  *Id*. at 17.

7      As Plaintiff's alleged onset date was May 29, 2019, the new regulations for

8  how an ALJ must evaluate medical opinion evidence under Titles II is controlling.

9  See 20 C.F.R. § 404.1520c (governing medical opinion evidence under Title II);

10  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg.

11  5844-01 (Jan. 18, 2017), available at 2017 WL 168819.  An ALJ must consider

12  and evaluate the persuasiveness of all medical opinions or prior administrative

13  medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)–(b).  The

14  factors for evaluating the persuasiveness of medical opinions and prior

15  administrative medical findings include; supportability, consistency, relationship

16  with the claimant, specialization, and "other factors that tend to support or

17  contradict a medical opinion or prior administrative medical finding," including

18  but not limited to "evidence showing a medical source has familiarity with the

19  other evidence in the claim or an understanding of our disability program's policies

20  and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(1)–(5).

1   The ALJ is required to explain how the two most important factors,

2   supportability and consistency, were considered.  20 C.F.R. § 404.1520c(b)(2).

3   These factors are defined as follows:

4   (1) Supportability. The more relevant the objective medical evidence
    and supporting explanations presented by a medical source are to

5   support his or her medical opinion(s) or prior administrative medical
    finding(s), the more persuasive the medical opinions or prior

6   administrative medical finding(s) will be.

7

8   (2) Consistency. The more consistent a medical opinion(s) or prior
    administrative medical finding(s) is with the evidence from other
    medical sources and nonmedical sources in the claim, the more

9   persuasive the medical opinion(s) or prior administrative medical
    finding(s) will be.

10

11  20 C.F.R. § 404.1520c(c)(1)-(2).

12  The ALJ may, but is not required to, explain how "the other most persuasive

13  factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§

14  404.1520c(b)(2).  However, where two or more medical opinions or prior

15  administrative findings "about the same issue are both equally well-supported ...

16  and consistent with the record ... but are not exactly the same," the ALJ is required

17  to explain how "the most persuasive factors" were considered.  20 C.F.R. §

18  404.1520c(b)(2).

19  These regulations displace the Ninth Circuit's standard that require an ALJ

20  to provide "specific and legitimate" reasons for rejecting an examining doctor's

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 22

1    opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

2        *A.  Salvador Lopez, PA-C*

3        Plaintiff asserts that the ALJ failed to address Mr. Lopez's February 2019

4    findings that she is restricted from working more than 32 hours a week and is

5    unable to type.  ECF No. 9 at 12.  This opinion by Mr. Lopez, Plaintiff contends,

6    cannot be squared with the RFC finding in which Plaintiff can work "on a regular

7    and continuing basis" of 8 hours per day, 5 days a week, and would be able

8    occasionally use her fingers in her work.  *Id*. at 12–13 (quoting Tr. 27).  Plaintiff

9    also argues that the ALJ did not properly note the November 2021 report by Mr.

10   Lopez, and dismissed it based on an improper characterization of its contents.  *Id*.

11   at 13–15.  Additionally, Plaintiff argues that the ALJ did not explain how the

12   November 2021 report was inconsistent with the rest of the record.  *Id*. at 15.

13       While an ALJ is not required to articulate how each medical opinion from

14   one medical source is considered individually per 20 C.F.R. § 404.1520c(b)(1), in

15   this matter the ALJ did note the 2019 report, denoted 5F in the record, and

16   provided justification for how the findings fit into the overall disability analysis.

17   Tr. 27, 29, 30.  It is unclear whether the contention that Plaintiff is only able to

18   work for 32 hours a week is reported by Plaintiff herself as it is listed under a

19   "subjective" heading, or if it is an opinion of Mr. Lopez.  ECF No. 6 at 380.

20   Regardless, the statement in the report does not appear to have support related to

the rest of the visit on February 20, 2019, and Defendant contends that a finding

that Plaintiff is unable to perform more than 32 hours of work a week does not

amount to a medical opinion.  ECF No. 13 at 12.  The Court agrees, the statement

does not fit squarely within the 20 C.F.R. § 404.1513(a)(2) medical opinion

definition, which requires "a statement from a medical source about what [a

plaintiff] can still do despite [his or her] impairment(s) and whether [she or he]

have one or more impairment-related limitations or restrictions in the following

abilities:"

>    (i)    Your ability to perform physical demands of work activities,
>           such as sitting, standing, walking, lifting, carrying, pushing,
>           pulling, or other physical functions (including manipulative or
>           postural functions, such as reaching, handling, stooping, or
>           crouching);
>
>    (ii)   Your ability to perform mental demands of work activities, such
>           as understanding; remembering; maintaining concentration,
>           persistence, or pace; carrying out instructions; or responding
>           appropriately to supervision, co-workers, or work pressures in a
>           work setting; [and]
>
>    (iii)  Your ability to perform other demands of work, such as seeing,
>           hearing, or using other senses.

Mr. Lopez's report on July 8, 2021, is devoid of an explanation as to why

Plaintiff is restricted to 32 hours a week, and thus the ALJ did not err by not

explicitly addressing it.

As to the November 2021 report, Plaintiff alleges that the ALJ did not fully

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 24

1  consider the nature of her disorders in dismissing it. Specifically, Plaintiff argues

2  that the record reflects more demonstrative evidence that support Mr. Lopez's

3  finding that she experiences dizziness, drowsiness, and pain. ECF No. 9 at 13.

4  Further, the ALJ improperly discounted Mr. Lopez's records of Plaintiff's mental

5  health disorders, as Mr. Lopez had been treating Plaintiff's physical and mental

6  ailments. The ALJ stated that the November 2021 report was discounted because

7  it was a form that provided no support or reasoning for the findings therein. Tr. 33.

8  The Ninth Circuit has held that an ALJ may "permissibly reject[ ] ... check-off

9  reports that [do] not contain any explanation of the bases of their conclusions."

10  *Molina*, 674 F.3d at 1111 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th

11  Cir.1996)). While not necessarily a "check-the-box," style form, the November

12  2021 report is a standardized form that the ALJ determined was reflective of

13  Plaintiff's own statements about her physical and mental impairments rather than

14  objective findings by Mr. Lopez. Tr. 32. The ALJ found no support for the

15  conclusions in the report and determined that they were not entirely consistent with

16  the record. *Id*.

17  Plaintiff also finds fault in that the ALJ did not consider that Mr. Lopez has

18  been her treating provider, and thus is qualified to opine on the impacts of her

19  mental health issues. EFC No. 9 at 15. However, under 20 C.F.R. § 404.1520c(a),

20  and ALJ is not required to give any additional deference to a treating medical

opinion.  Instead, an ALJ must evaluate the opinion for the above-described

supportability and consistency factors.  *Id*.  In this case, the ALJ determined that

Mr. Lopez's assessment of the impact of Plaintiff's dizziness, drowsiness, and pain

were inconsistent with the rest of the record and unsupported.  Tr. 33.  Thus, the

ALJ did not err in relation to Mr. Lopez's report.

      *B.  Marquetta Washington, ARNP, Dr. Merry Alto, and Dr. Mark*

       *Magdaleno*

      Plaintiff argues that the ALJ improperly credited the medical opinions

produced by Ms. Washington, Dr. Alto, and Dr. Magdaleno.  ECF No. 9 at 16.

Specifically, Plaintiff argues that the findings did not demonstrate the support each

was founded on, nor how they were consistent with the record.  *Id*.  Plaintiff points

to places where Ms. Washington's assessment of Plaintiff's abilities that may have

altered the ALJ's findings if considered.

      As to Dr. Alto and Dr. Magdaleno, the ALJ determined that both doctors

reviewed the evidence in the record and found that Plaintiff did suffer from the

ailments she described, including fibromyalgia, chronic pain, spinal disorders,

obesity, and the debilitating effects that result.  Tr. 31–32.  However, both doctors

determined that even in light of Plaintiff's physical disorders, she is still able to

lift, carry, and push 50 pounds occasionally and 25 pounds often, as well as bend,

balance, crawl, and kneel occasionally, with no additional limitations.  *Id.*  Ms.

Washington's assessment is much the same, finding that after a physical exam, Plaintiff does have physical ailments, but had the same functional capabilities as determined by both Dr. Alto and Dr. Magdaleno.  Tr. 31; ECF No, 6 at 440–46.  In sum, the ALJ did not err in the supportability or consistency factors in evaluating the medical opinions as they relate to Plaintiff's physical capabilities, because they have each arrived at a consistent result.

> *C. Dr. Linda Lindman, Dr. Gerald Gardner, and Dr. John Wolfe*

Plaintiff similarly takes issue with the ALJ's determination of supportability and consistency as to her mental health assessment.  She argues that the ALJ did not properly apply her own testimony to the application of the medical findings as it relates to her depression and mental cognition.  ECF No. 9 at 17.  Further she asserts that Dr. Lindman's finding of a mild workplace limitation was in contradiction with the results of the exam.  *Id*.  However, Dr. Lindman and the ALJ both took into account the stated limitations derived from the exam of Plaintiff.  After an examination, Dr. Lindman found that Plaintiff had a depressive disorder and an unspecified anxiety disorder, and therefore her abilities in the workplace and work attendance would be mildly impaired, also due in part to physical pain.  ECF No. 6 at 438.  The ALJ then relied on this finding, in conjunction with the consistent findings of Dr. Gardner and Dr. Wolfe, to determine that Plaintiff's capabilities in the workplace would be slightly impaired, and as a result, she could

maintain both simple and detailed, but not complex, work that deals with superficial interactions with co-workers and the general public. Tr. 34. Therefore, the ALJ did not commit reversible error in finding that Plaintiff was not disabled based on the review of the medical records.

**III.    The ALJ did not err in the review of lay opinions.**

Plaintiff argues that the ALJ should have subscribed more weight to the lay opinions contained within the record. ECF No. 9 at 17. Plaintiff assigns blame in the form of reversible error because she claims that the ALJ misstated the rule regarding lay opinions and thus failed to consider them under the regulation. *Id*. at 19.

Under 20 C.F.R. § 404.1545(a)(3), an ALJ is tasked with considering all evidence that demonstrate limitation, including that which is offered by lay people. Additionally, the ALJ will weigh the description of pain and limitation against the objective medical evidence provided to make a determination about intensity, persistence, and limiting effects of the symptoms. 20 C.F.R. § 404.1529(c)(3)–(4). The ALJ is to "consider any personal observations of [non-medical sources] in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, at *7. In the present matter, the ALJ agreed with the characterization of Plaintiff's capabilities as stated by the opinions of her family

1   members.  Tr. 34.  However, the ALJ did not agree that the degree and severity as

2   described by the opinions was consistent with the rest of the record, including

3   Plaintiff's daily activities.  *Id*.  Because the ALJ gave specific, clear, and

4   convincing reasons for rejecting Plaintiff's lay testimony, and such analysis was

5   consistent with the relevant rules regarding the assessment of opinions on

6   Plaintiff's abilities, the ALJ did not reversibly err in this consideration.  *Valentine*

7   *v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694 (9th Cir. 2009).

8       **IV.**   **The ALJ did not reversibly err in assessing Plaintiff's medical**

9                **disorders.**

10         Plaintiff claims the ALJ did not consider all of her medically-determinable

11   impairments ("MDIs") in reaching a findings of not-disabled.  In reaching this

12   conclusion, Plaintiff claims that the ALJ should have taken secondary effects from

13   her disordered sleeping into account in reaching the determination.  ECF No. 9 at

14   20.  Plaintiff argues that the ALJ reversibly erred by not crediting Mr. Lopez's

15   findings that she "may be experiencing" mal effects of disordered breathing in her

16   sleep, which results in her sleeping up to seventeen hours a day.  *Id*. at 20–21.

17   However, this determination did not definitely attribute Plaintiff's symptoms to her

18   inability to retain a full restful night sleep.  Additionally, Plaintiff cites to a sleep

19   study referred out by Mr. Lopez which revealed a drop in oxygen levels while she

20   slept.  *Id*. (citing ECF No. 6 at 609–15).  This study revealed no constructive

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 29

findings or diagnosis. As a result, the Court determines that the ALJ did not

reversibly err in reaching a finding that Plaintiff is not disabled.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's motion seeking a reversal of the order of the Social Security

   Commissioner (ECF No. 9) is **DENIED**.

2. The Commissioner's Brief (ECF No. 13) is **GRANTED**. The final decision

   of the Social Security Commissioner is **AFFIRMED**.

The District Court Executive is directed to enter this Order and Judgment,

furnish copies to counsel, and close the file.

DATED February 23, 2024.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING THE SOCIAL SECURITY COMMISSIONER'S
DENIAL OF BENEFITS ~ 30